May it please the Court, my name is Bobbi Stratton and along with my co-counsel Maury Levin, I represent Thomas Whitaker and Perry Williams. At its core, this case is about due process. As this Court is aware, this is the third time this case has been to this Court in the past almost four years. The first time was when a co-defendant, Michael Yowell, sought injunctive relief before his execution. The last time this Court returned the case to the District Court for trial on the merits, that did not happen. And now we are back here again. During my time before the Court, I will discuss three issues. The procedural errors in dismissing the case, specifically, second, the procedural errors in dismissing the case on statute of limitations, and thirdly, the lack of meaningful discovery that led to the erroneous findings by the District Court below. In my first argument, the District Court applied a clearly erroneous standard in a 12b6 motion. The District Court actually applied a summary judgment standard in analyzing the 12b6 motion and ultimately erred by not converting the motion to a summary judgment under 12d. This case really turns on the most basic, fundamental procedural issues that are brought in a 12b6 motion, and that is what standard the Court should be applying when analyzing such a motion. Scalia. Well, we apply the sufficiency of the pleadings. We review those de novo, do we not? Yes, that is correct. But what the District Court did was it applied a heightened standard. It didn't apply a sufficiency of the pleading standard. It considered whether the — not whether the factual allegations in the pleading were true and taken as true and whether or not they were sufficient. The District Court actually only considered whether the substantiated allegations were true and then only construed those in the light most favorable to the plaintiffs. But on appeal, we can look at all the pleadings and decide whether they're sufficient as a matter of law, regardless of what the District Court did. Is that right? That is correct. And that brings me to — So under the — under the Supreme Court's decision in Glossop, there's insufficient pleading of a substantial risk of harm here. But when you look at what the — what was actually included in our — in our case, the — we had an expert in the opinion who actually opined about what the — what were using compounded pentobarbital. But in a situation like this, even though it is a de novo review for this Court to consider, there was an entire procedural debacle created by the District Court that ultimately led to a very — I mean, I would consider it a convoluted record at best. I would also — I would also argue that by — by what the District Court did, by having a purported trial on the merits, I'll just recount to the Court a little bit of the procedure that happened. Once this Court — But again, we can still go back and look at the pleadings and decide whether they are sufficient or insufficient as a matter of law, regardless of what the District Court did. Yes, Your Honor. That — that is correct. The Court can do that under — under a 12b-6 motion. Did you plead an available alternative to the program? Yes, Your Honor. Under — What is that? What did you plead as an — excuse me — as an available alternative? The alternative that we pled was an — an FDA-approved barbiturate. We didn't name a specific drug, but it is our opinion that there is actually no court that requires — the Supreme Court, even in Glossop, doesn't require you to name a specific drug, just that they're just a — a type of drug to be — to be used as — as the alternative. But you — you didn't — you didn't plead that there is such a thing, that such a drug exists? No. I mean, I would say that, yes, we did — we did plead that such a drug exists. We just didn't plead, use this — use drug A, whatever drug — the name of drug A is, because that's — And what — what is your contention as to what alternative drug — an available alternative exists? What is the name of that drug? We didn't plead a specific drug. I mean, that — Do you know of one? Do I — do I know of one? Yes. Standing here today, I mean, I'm not an — I'm not an expert on what the alternative is. But surely the — but surely the attorney, whether it was you or whoever else it was, that — that filed that — that pleading, in good faith, if — if he or she pled an available alternative, then he or she would have known that — that such an alternative exists, wouldn't have just made that up. Oh, no. Of course. I mean, Your Honor, I signed — I signed the — I signed the complaint. All right. So — so it would — you know, it would be me. But our position is that Glossip doesn't require us to name a specific drug. All right. But let's — let's go back and go over it again. Is — is there — is there an alternative? Is there an available alternative? Our — our opinion, based on discussions with our expert, is there are FDA-approved barbiturates out there that could be used as an alternative to this compounded drug proposal by the State that would be more — that is a manufactured drug that would be more highly — highly tested and more reliably tested to ensure that the concerns that our expert had with the compounding of drugs does not exist for these, you know, condemned inmates, particularly my clients. Did you suggest that in your complaint, that there was an alternative FDA-approved barbiturate that might take the place? Yes. Yes. We — I mean, we pleaded that. But as I said to Judge Smith, we didn't plead choose drug A. We pleaded that the State could use an FDA-approved barbiturate that follows the — you know, the testing standards of the FDA that could be used in the alternative of a compounded drug. So do you think that's sufficient? Yes. I believe that is sufficient. I mean, gloss up does not require you to be more specific. There were two cases that went up to the U.S. Supreme Court recently that — on that very issue that certiorari was denied. And therefore, I believe that, based on that, that there is no specificity given from the under gloss up. In the event that the Court does, under the De Novo review, determine that this case should be turned back, one of the things that occurred by the trial court — So in connection with that, because as I understood this argument, it was that the Court should not have dismissed on a 12b6, where it's only supposed to look at pleadings, but in fact it considered matters outside the pleadings. But you appear now to be conceding that all we have to do is say, well, we're just going to review it De Novo, and then we can. So we're not even talking now about whether or not it was error for the district court to decide it on a 12b6 and consider matters outside the pleadings. We're past that. You're conceding that argument. Is that what's happening? I'm actually not, Judge. I mean, I will say, in the way that Judge Smith asked me the question, you know, can we look at this De Novo, sure, that is the right under a 12b6 for the Court to look at — look at De Novo. But what actually happened at the trial court is that it was titled a 12b6, but it really was a 12d. And so procedurally, even though, yes, you could look at a 12b6 De Novo, that's not actually what happened at the trial court. And even if you look at the — the motion that was filed by the State, and I don't have any of these specific record sites popping in my head, they also — the State also referenced proceedings and procedures that weren't just in the complaint or what was attached to the complaint. The Court had several — several hearings where the — he asked us a lot of questions. We submitted multiple expert reports to — to try to answer the Court's questions. And — and the State even relied upon those in filing its motion to dismiss. And in doing that, the totality of the motion was a 12d. It wasn't a 12b6. And therefore, we should have had the opportunity to file a substantive response that went to the merits of the claims, and that motion should have been converted to a summary judgment under 12d. So while I do agree that if it was a straight 12b6 and that was the only thing that was being considered, yes, this Court could consider it De Novo, but procedurally — procedurally, that's not what happened below. Sotomayor, why don't you address the question of whether any of these counts are time-barred? The time-bar issue? Oh, statute of limitations. Yes. That's right. Limitations. Yes. The — that specific issue, Your Honor, this Court has held in — in Walker v. Epps that the — the accrual of a statute of limitations on a challenge of the — challenge of the method of execution accrues upon — in this case, it would be the adoption of the change protocol. Our position is that that occurred in 2013, a month before this case was filed. Now, the district court held that it actually was in 2008 when the protocol was changed, and it wasn't until 2012 that it changed to the compounded pentabarbital. Therefore, it's actually the 2008 protocol that applies. But our position, one, is that there are issues in Walker v. Epps that actually were wrongly decided. If you look at the concurrence in this — of this court in the Wood case that recently came out, there's an explanation that relates back ultimately to a U.S. Supreme Court case, Holmberg v. Ambrecht, where that — where that court held that statute of limitations are not controlling measures in equitable relief. That position has never been challenged to — that I could find to the — that position in the Supreme Court, and even — and even has been, unfortunately, cited in dissents and concurrences. It's not a holding opinion in this court. But even so, I think that when you look at the totality of the case that is before — that was before the district court, it's all about the change of the protocol to compounded pentabarbital. And all of the procedures that are in place from the protocol and how switching to compounded pentabarbital ultimately exasperates the lack of procedure, the — the — the very generic nature of the protocol that doesn't provide ample due process that is available in many, many other States. I would also — The Walker case, then, we would have to go in bank to — to fix the problem with the Walker case if we decide that it's wrongly decided. Isn't that right? Yes. You're — you're correct. I mean, that's the procedure of this court. However, you don't need to overturn Walker in order to still say that it's not — I mean, you could still say what was held in Wood, that it's the 2013 — or 2013 change to compounded pentabarbital runs the — the accrual of the cause of action. And this case was filed a month later. There's also, in how the court granted the statute — granted statute of limitations dismissal, we did make our law of the case argument in our brief. Our position on that is that what the district court held was that — at the — held that my clients have known since 2008 that they would be executed by lethal injection. But what the court held the first time this case was up on appeal was — or the last time, I'm sorry, this case was up on appeal, was that they didn't actually know how they were going to be executed. Therefore, they don't have standing. Now, I will concede that the State argued in their brief that, therefore, they don't have standing. A piece of it suggests that that isn't law of the case. But even though the actual order was overturned, the court flip-flopping on that issue and then ultimately deciding to dismiss the case on that issue creates an inequitable position for our — for my clients, specifically that they, on one hand, were deemed to not know how the — deemed to not know how they were going to be executed, and then, on the other hand, deemed to definitely know how they're going to be executed, and therefore, their case can no longer stand. I'm not sure. Are you complaining about the use of phenobarbital or that it's expired? Are you challenging the manufacturer versus compounded, or is that — or are the issue that these drugs might be expired by the time they're used? It's both, Your Honor. The — our expert has opined, and it's in our complaint that — And if they were to test them the day before and say, they're fine, they're good, would that satisfy things? Well, and, Frank, Judge, I think that — I'm sorry. I didn't mean to talk over the top of you. I think that that's, frankly, why the district court ultimately dismissed the case was — I'm seeing my own time, but I'll finish your question very briefly — was because the State conceded at one of these many hearings that we attended that they would retest the drugs, and it was upon that point in time that the court did not let us come back for any purpose. No discovery, no status conference, and that lasted for at least nine months, that we were just in limbo because of that very issue. But, ultimately, that doesn't address the — the issues that were raised in our complaint. It addresses this narrow issue that the judge thought would make the case go away and make everybody happy. All right. Thank you, Ms. Stratton. You've saved time for rebuttal. Mr. Keller. May it please the court. As of the time of the district court's ruling, the district court found that Texas had used compounded pentobarbital in 32 executions without any incident. Today, that number is 37. And as this court in Wood v. Collier already determined, the plaintiff's claims here regarding compounded pentobarbital are wholly speculative and were properly dismissed. In Wood, that was affirming a similar 12b-6 dismissal. And the three-judge panel there found substantially identical claims here were properly dismissed by the same district court. So to rule for the plaintiffs here, you would have to split with the Wood panel that was already decided. And also, that Wood decision involved the same underlying report from Dr. Rubel that we're talking about here. So that same record in Wood is the record that we have here. And if I can address the 12b-6 pleading standard directly, the plaintiffs are mistaken for the primary reason that Ashcroft v. Zickball sets forth the pleading standard, that it's not mere — you cannot come to court and plead a possibility of injury. There has to be a plausible, a substantiated basis to believe that harm will occur. And here, especially when there have been 32 executions with compounded pentobarbital without any incident, the claims about retesting the use-by date and the failure to obtain additional details about the execution protocol, that is not the case. That is not stating substantiated, plausible claims, particularly when you combine Zickball's pleading standard with the substantive standard in Glossa. Do you think that the use-by date in itself implies that there's a problem with a drug after this date that would justify testing it to see that if it's still an effective drug after a certain date? Well, I'll be clear about their claim. We are not using compounded pentobarbital after the use-by date that the pharmacy is giving us. Their claim is — there's multiple levels of speculation. One, the level of speculation would be that the State would, in fact, use a drug past its use-by date, or they're also raising claims that, well, the use-by date that we are being provided is somehow wrong. And their expert in their report, even, said that it was not possible to state, as a scientific matter, that qualitative or probable changes that compounded pentobarbital in defendant's possession could undergo over the next 10 months. That's at ROA 1184. And so when you pair that with Glossa's standard, that you have to show a risk that is sure or very likely to cause serious illness and needless suffering, in other words, a substantial risk of serious harm, their pleading doesn't come anywhere close to that. And even the reports that they were giving the Court to try to substantiate those claims don't come close to that. And even if they had pleaded that, they would still have had to have plead — pled a feasible, readily-implemented alternative that would significantly reduce a substantial risk of severe pain. My friend — Kennedy. Are you then representing to us that the State does not use outdated drugs in executions? Yes. The State does not use compounded pentobarbital. Sorry. The State does not use execution drugs after the use-by date that we have been provided. And if I can mention the alternative prong on Glossa, my friend mentioned that Glossa didn't say you had to identify any particular drug. To quote from Glossa, the Supreme Court said, Petitioners do not seriously contest this factual finding, and they have not identified any available drug or drugs that could be used in place of those. It's not enough to come to court and say, use an FDA-approved barbiturate. You have to identify a drug and a drug that is, in fact, available. That would necessarily require identifying a particular drug. To be clear about which counts are time-barred, we are not raising a statute of limitations defense for the claims related to compounded pentobarbital. But the time bar would apply to Count 1, which is about the lack of a provision in our protocol that would tell plaintiffs if there was a change to the drug being used. Count 2, a provision allegedly lacking about an access to counsel provision. And part of Count 3, which are a miscellaneous slew of allegedly defective protocols regarding training of officials, et cetera. Count 1, Count 2, and those miscellaneous challenges to Count 3 have nothing to do with compounded pentobarbital. Regardless, all of those claims are meritless. It is pure speculation that Texas would even change its drug away from compounded pentobarbital. Regarding access to counsel, our protocol does allow access to counsel approved by the warden. And there's — it would be purely speculative that the warden would deny access to counsel in an appropriate case. And the miscellaneous protocol challenges about training and qualifications, none of that comes close to rising to the level of GLOSSIP, which required a sure and very likely chance of serious illness or substantial risk of serious harm. So your contention is that GLOSSIP would require that they name specifically what an alternative method of execution would be, what drug would be used. Yes. Because we need to know if that drug is available. And if there's not a particular drug that is being identified, you would not be able to know if it's available. And even if it were available, it would still have to be a feasible and readily implemented alternative, and one that would significantly reduce a substantial risk of severe pain. I'm quoting from GLOSSIP there. To know all of those facets, we would have to be presented with an actual — a named alternative to be able to — Did Texas agree that it would test the drugs at a period close in time to when the execution would occur? For these two particular prisoners, yes. We stipulated that we would retest the compounded Now — So that's not a part of the protocol. It was just a stipulation that was made with regard to these two. That's correct. It was a voluntary stipulation. We didn't have to stipulate to that, as the district court noted in the subsequent Wood opinion. There was no Eighth Amendment or legal requirement that we do that. But we stipulated, and we will honor that stipulation for these two prisoners. Now, that claim, though, is still not moot because what the plaintiffs have argued is that that's not good enough. They need testing under certain conditions, and they want certain — they want additional information. That's at ROA 1352 to 55. So, Wood has already rejected testing claims about compounded pentobarbital, the used-by-date claims, the additional information claims. And then, as far as the time-barred claims, not only are they time-barred, and, yes, you would have to go en banc to reverse Walker, but there's no basis to do so. And, in fact, if you were to go en banc and you were to reverse Walker, you'd be creating a circuit split with at least two other circuits. So that is good precedent that should be retained and is correctly implementing Supreme Court precedent. If I can just briefly address the procedure back in district court, because I think this is important to understand how we got here today in looking at an expert report or two at a 12b6 posture. When this Court had the case the first time, it ruled that there was Article III jurisdiction. The claims were right. At that point, it went back down to district court. As soon as we got back down to district court, there was a hearing. This would have been March 31st of 2015. And at that hearing, the district court immediately expressed skepticism that they had not sufficiently pleaded claims, that they were speculative claims. In reaction to the district court at that hearing noting that the claims were speculative, that's precisely when plaintiffs proffered Dr. Rubel's first report. Now, the — at that point, the State asked for dismissal. Then Glossop was decided, and after Glossop, the district court had a second hearing, again expressing skepticism, particularly in light of Glossop, that these were not adequately pleaded claims, and plaintiffs then proffered a second report from Dr. Rubel. So what was going on in district court was not a limitation of due process. What it was was the district court allowing plaintiffs a chance to substantiate their claims. And so from the time we had that first hearing — So when the case was sent back, wasn't there an instruction that there was to be full discovery for an appropriate trial on the merits? No. What the last few lines of the opinion did refer to an appropriate trial on the merits. However, the court could not possibly have been deciding any type of a dismissal or rejection of summary judgment or merits claims, because in that posture, the district court had found it lacked Article III jurisdiction, because the claims were not ripe. And this court reversed on that and said, no, the claims are ripe. But that was necessarily only a ruling that there was, in fact, Article III jurisdiction, and it couldn't possibly have reached any other issue regarding whether a dismissal was appropriate or whether summary judgment would have been appropriate at that time. And so the mandate rule only forecloses relitigation of issues that were explicitly or impliedly decided. The court could not possibly have decided an issue beyond the Article III jurisdiction point. And in any event, Wood v. Collier has already affirmed the 12b6 dismissal of substantially identical claims. If there are no further questions. All right. Thank you, Mr. Keller. Thank you. Bratton, you've saved time for rebuttal. So tell us what effect we should give to Wood. Your Honor, Wood was a 12b6 motion. So the motion that was before the district court was not a 12b6 motion. It was called a 12b6, but it was effectively a 12d. It was a summary judgment without the opportunity to respond. And therefore, the outcome in Wood cannot be the same outcome in this case. I do want to address some of the statements that the State made, because they do fall in line with some of the way the State presented its case in the motion to dismiss. For example, Judge Prado asked about the use by date and the State's stipulation as to retest the drug, and that the State has said that they will not use the drugs beyond the date that was given to them by the pharmacy. If you look at the details of what is given to them by the pharmacy, it's like a year or something like that. And what our expert opined is that, based on the U.S. pharmacopeia, if you're going to compound drugs, the use by date at most is 45 days, and really should be a much shorter period of time. And the State is keeping it for a much longer period of time, which is totally contrary to the scientific standard. Who sets these deadlines as to when a drug is outdated? So according to the U.S. pharmacopeia, based on the type of drug and how the compounding process is done, there are standards that are set forth, and they're generally depicted based on the level of refrigeration that the drug is kept in. What would be the standard with regard to phenobarbital? Our expert — Not your expert. What is the standard, the industry standard? Oh, I mean, so the U.S. pharmacopeia says that this type of drug should not have a beyond-use date of more than 45 days if it's kept under specific refrigeration standards. Now, this — and what the State is doing is actually totally contrary to the scientific standard. Now, are you not satisfied with the representation that they said they would test the drug shortly before the execution? As a practical matter for my clients, I cannot impracticably not be somewhat satisfied that that will happen. However, I also cannot equally be satisfied that they're going to also use compounded pentobarbital. That is a drug that's diminishing in supply, and we know for a fact that the State already has midazolam in hand. We also know that there's litigation between the State and the FDA over whether or not they're going to be able to get sodium thiopental from some more than suspicious circumstances from suppliers in India. So while I can't not concede that that's better than nothing, that's definitely not adhering to due process, either, because contrary to, you know, what the State said during its argument is that the procedure of the way the Court took multiple reports and things from our expert wasn't offered to — I mean, I was there, and I can tell you it was not the case. At every opportunity, we asked for the ability to even just send simple interrogatories in order to get some sworn answers from the State, and that wasn't even — that wasn't even allowed. The — the judge allowed us to only ask precise questions of fact, and it was only signed by their lawyers. I mean, I was told at one point when we actually set us for a trial date that the State didn't even have to produce a witness, and I wouldn't even be able to cross-examine anyone. That — that is not due process. I mean, that is — that is a situation where it — if the — if this opinion were allowed to — allowed to stand, it would just put this case in an impossible posture where — where they would be held to a certain standard, but then failed to meet that standard because the Court held our hands. All right. Thank you, Ms. Stratton. Thank you. Your case is under submission. The Court will take a brief recess before hearing the final two cases.